**746**

NORTH AMERICAN PRODUCE
CORP., Plaintiff,

v.

NICK PENACHIO CO., INC.,
Defendant.

No. CV 88–1127.

United States District Court,
E.D. New York.

Dec. 12, 1988.

Ciovacco & Campanella by Lewis J. Campanella, Westbury, N.Y., for plaintiff.

Leonard Kreinces, Great Neck, N.Y., for defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

The present action arises out of a contract between plaintiff and defendant. Plaintiff, North American Produce Corporation ("North American"), alleges that the defendant, Nick Penachio Co., Inc. ("Penachio") committed two antitrust violations. First plaintiff alleges that defendant tried to maintain a vertical price maintenance scheme through its contract with defendant in violation of Sherman Antitrust Act § 1. Second, plaintiff alleges that defendant is engaged in conspiring to monopolize the wholesale fresh produce market ("fresh produce market") in New York, New Jersey and Connecticut, and the wholesale fresh produce market of schools and hospitals in the tri-state area ("institutional fresh produce market").

Defendant moves this Court to dismiss the action for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6).

In a motion to dismiss for failure to state a claim, the facts must be construed in a light most favorable to the plaintiff. This provides plaintiff an opportunity to discover sufficient facts to continue the litigation process. These liberal pleading rules are applied to antitrust cases, even though such cases often involve substantial sums of money. *See Poller v. CBS, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); *George C. Frey Ready–Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551 (2d Cir.1977).

Thus in deciding this motion to dismiss the Court will construe all the facts alleged by plaintiff as true.

## FACTS

The defendant is a New York corporation and is a wholesale supplier and seller of fresh and frozen vegetables ("fresh produce") to distributors in New York and various other states in the United States. In early November 1982, plaintiff and defendant entered into a contract. In essence the contract established a broker/distributor relationship. In describing this relationship plaintiff alleges the following facts. Plaintiff used its customer base to fill orders for fresh produce. The plaintiff would then fill these orders with Penachio's produce. According to the contract, the relationship between the parties "shall be that of independent contractors." Plaintiff set up an office on defendant's premises. After taking its customers orders, it would order the fresh produce from Penachio. Upon placing the order with Penachio, plaintiff alleges that it would separate its fresh produce, take title to it at Penachio's facility, prepare and palletize each order for delivery to North American's customers. Then North American would load the orders on trucks leased by North American and deliver the orders to its customers.[1]

North American further alleges that it bore the risk of loss of the fresh produce. On each sale plaintiff was paid a commission.

## VERTICAL PRICE
## MAINTENANCE CLAIM

In alleging a vertical price restraint, plaintiff focuses on the following section of the contract:

> The Contractor [plaintiff] shall not sell any merchandise to any of its customers at a price that shall not at least equal the cost of such merchandise charged by Penachio to the contractor plus forty (40%) percent of such cost unless Penachio

agrees, in writing, to sell such merchandise at a reduced price.

(Defendant's Exhibit C—Contract ¶ 6).

In its amended complaint plaintiff alleges that it refused to sell fresh produce at "defendant's fixed resale price" and sold fresh produce at a lower price. Due to plaintiff's supposed failure to comply with the fixed price, defendant terminated plaintiff. Thus, plaintiff alleges a Sherman Act § 1 violation. In essence, plaintiff claims that through its contract, defendant created a vertical price maintenance scheme.

In arguing against dismissal, plaintiff contends that any vertical price maintenance scheme is a per se violation. *See Dr. Miles Medical Company v. John D. Park & Sons Company*, 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502 (1911). Plaintiff contends that this Court need only determine whether or not the alleged conduct occurred, and therefore this cause of action should not be dismissed.

In any antitrust case, the question of whether the per se rule applies is a crucial threshold question. Thus this Court will deal with this issue first.

Due to the severity of the per se rule, the Supreme Court has applied it sparingly. Thus, the Court has applied the per se rule only to those activities which can provide no justification or benefit to a competitive market. *See* Areeda, *Antitrust in Transition: The Changing Contours of the Per Se Rule*, 54 Antitrust L.J. 27 (1985).

Plaintiff asserts that the law of vertical price restraints is crystal clear. Thus, in arguing against dismissal, plaintiff cites *Simpson v. Union Oil Co.*, 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964), and asserts that this Court should apply the per se rule to this case. However, the application of the per se rule to the facts of this case is not so simple.

The doctrine against vertical price restraints oscillates between the following two possibilities. On the one hand, a company or corporation must be allowed to tell its employees or agents at what price they are to sell the company's goods. On the

---

1. Defendant contests many of these allegations.

other hand, companies should not be allowed to restrict the pricing decisions of independent distributors. If such restrictions were permitted, independent distributors would be robbed of a critical decision—what price to sell their products—and potentially, competitive prices could suffer because one corporation could control the pricing decisions of hundreds of distributors. *See Simpson v. Union Oil Co.*, 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964).

The history of the vertical restraint doctrine began with *Dr. Miles Medical Co. v. John D. Park & Sons Co.*, 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502 (1911). There the Supreme Court held that an agreement between a seller and its buyer fixing the price at which the buyer could resell the product is a *per se* violation of § 1 of the Sherman Act. For a time it was thought that a manufacturer-supplier could safely avoid the *Dr. Miles* rule by consigning the inventory to independent distributors with a price-fixing provision in the consignment contract. Thus, in *United States v. General Electric Co.*, 272 U.S. 476, 488, 47 S.Ct. 192, 196, 71 L.Ed. 362 (1926) the Supreme Court held that there was no antitrust violation where the "owner of an article patented or otherwise," sought to sell his product directly to the consignee by utilizing a "genuine contract of agency" and "fixing the price by which his agents transfer the title from him directly to such consumer."

The consignment device was restricted substantially by the Supreme Court in *Simpson v. Union Oil Co.*, 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964). There a gasoline service station lessee alleged that his lessor, Union Oil, refused to renew his lease because he had sold gasoline consigned to him at less than the price agreed to in the price fixing agreement. The Supreme Court refused to apply the *General Electric* rule to *Simpson*. Instead it distinguished *General Electric* as a patent case. Thus, the Court, relying on the substance of the agreement rather than its form, held that the "consignment" was in fact a coercive form of price maintenance, and was illegal under antitrust law.

In discussing the per se rule against vertical price restraints the Supreme Court has stated that such restraints present no benefits to free competition and thereby, are per se illegal. *See Dr. Miles, supra*, and *Simpson, supra*. However, modern commentators have almost universally claimed that under certain circumstances vertical non-price or price restraints do yield benefits to a competitive economy. *See* R. Posner, *Antitrust Law: An Economic Perspective*, (1976); P. Areeda, *Antitrust Analysis; Problems, Texts Cases*, 3d Ed.1986 Supp., pp. 147–155.

Perhaps in response to this criticism, the Supreme Court has backed off from the per se rule in non-price vertical restraints. The Supreme Court refused to apply the per se rule to a supplier's territorial restrictions over its distributors even though such restrictions have the same overall effect as vertical price restraints. *See United States v. Arnold, Schwinn & Co.*, 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967); *Continental T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977). Even though the Supreme Court presently disfavors the per se rule, it has never overruled *Simpson* or *Dr. Miles*. In a recent case, the Supreme Court stated, "vertical restraint is not illegal per se unless it includes some agreement on price or price levels." *Business Electronics Corp. v. Sharp Electronics Corp.*, —— U.S. ——, 108 S.Ct. 1515, 99 L.Ed.2d 808 (1988).

At first blush, since the agreement between the plaintiff and defendant involves maintaining a price floor, the per se doctrine prohibiting vertical price restraints should apply. However, this case does not fit comfortably into a *Simpson* type analysis.

The opinion in *Simpson* did not rest solely upon the coercive use of the termination clause in the consignee agreement. Instead, in *Simpson*, Union Oil tried to impose its pricing decisions upon scores of independent distributors situated over a large geographic area. The Court strongly suggested that the overall distribution scheme and not the termination of a dealer triggered the application of the per se rule:

When, however, a 'consignment' device is used to cover a vast gasoline distribution system, fixing prices through many retail outlets, the antitrust laws prevent calling the 'consignment' an agency, for then the end result of United States v. Socony–Vacuum Oil Co. ... could be avoided merely by clever manipulation of words, not by differences in substance. The present, coercive 'consignment' device, if successful against challenge under the anti-trust laws, furnishes a wooden formula for administering prices on a vast scale.

*Simpson,* 377 U.S. at 22, 84 S.Ct. at 1057 (footnotes omitted).

The Supreme Court's emphasis on the vastness of the distribution system indicates that the per se rule should be applied only when the distribution system is roughly equivalent to the one described in *Simpson. See Greene v. General Foods Corp.,* 517 F.2d 635, 652 (5th Cir.1975).

In the instant case, plaintiff's own description of defendant's distribution system indicates that the per se rule should not apply.

By plaintiff's own admission it set up an office on the premises of defendant. After placing orders with customers, plaintiff would then tell defendant of the orders it had placed. Later plaintiff alleges that it would load the produce on trucks it claimed it leased. However, since plaintiff worked on the premises of defendant, *the ordering and loading of produce all took place on the premises of defendant.*

Thus, the vast distribution system the Supreme Court worried about in *Simpson* does not exist. No consignment device used to cover a vast distribution scheme is present. Therefore, the per se rule does not apply.

Even though the per se rule does not apply, this does not imply necessarily the case should be dismissed. Plaintiff could triumph under a rule of reason analysis. Yet, even if the per se rule applied, plaintiff's vertical restraint cause of action *should be dismissed if the plaintiff is the agent of the defendant.*

■ Under the vertical price restraint doctrine, a company or corporation may restrict the pricing decisions of its agents, but may not restrict the pricing decisions of independent distributors. In *Simpson* the Supreme Court held that Union Oil's calling its distributors agents was a sham. Instead the Court looked to the substance and not the form of the consignment agreement and held that the distributors were in fact independent.

■ The question in this case is whether plaintiff is an agent or an independent distributor. In arguing that it is an independent businessman, North American compiles the following allegations:

1. North American had title to the Fresh Produce;

2. North American bore the risk of loss of the Fresh Produce.

3. North American bore the risk of credit and collection on sales made. Ergo, when a customer failed to pay, North American bore the risk of loss.

4. North American was paid a commission based on the resale price as opposed to a salary.

5. North American sold all Fresh Produce pursuant to its license with the U.S. Department of Agriculture and bore all liability for such Fresh Produce.

6. North American segregated, prepared for delivery, palletized and shipped the Fresh Produce to its customers.

7. North American took the orders from its customers, processed the orders and took care of all customer problems.

8. North American furnished all personnel to do the foregoing.

9. Penachio did not pay social security or withhold income tax on North American's commission.

10. North American was responsible for the operating expenses of its business.

11. The agreement provided that North American is an independent contractor that the Fresh Produce was sold to North American, and that North American must resell the Fresh Produce for its cost plus 40%.

12. North American had to pay Penachio 1% interest per month on North American's late payments to Penachio even if North American had been unable to collect the money from its customers.

13. North American bore the risk from price competition.

First, nowhere in the agreement does it provide that the fresh produce was "sold" to North American. *North American doesn't allege that it paid Penachio for the fresh produce.* The contract does state that "All sales and billings ... shall be made in the name of [North American]" (Defendant's Exhibit C—Contract ¶ 5a). However, this bookkeeping device does not necessarily indicate that the goods were "sold" to North American. Instead, North American brokered a transaction between its customers and Penachio. By its own admission, North American placed orders with its customers by selling them Penachio's produce. It never bought the goods wholesale and sold them retail to the consumer. Instead, it received a commission on each transaction. Second, although the contract provides that plaintiff is an independent contractor, this is not dispositive. Plaintiff may be an independent businessman, but for antitrust purposes, it may be an agent. *See Hardwick v. Nu–Way Oil Co., Inc.*, 589 F.2d 806, 809 (5th Cir.1979). Third, although plaintiff alleges it acquired title to the fresh produce, this allegation is far less important than plaintiff believes. Passage of title has lost its power in commercial law, *see e.g.*, UCC § 2–509(2), and it should not be a major issue in an antitrust case either. *See Morrison v. Murray Biscuit Company*, 797 F.2d 1430, 1436 (7th Cir.1986).

Plaintiff's focusing on formalisms like risk of loss and passage of title are not nearly as important as the fact that plaintiff's handling of the goods was minimal. Although plaintiff was paid a commission, and not a salary, plaintiff operated on the premises of defendant. From defendant's premises, plaintiff sought orders for defendant's goods. The produce was then loaded from the premises of defendant and shipped directly to the customer.

Accordingly, from plaintiff's own allegations this Court concludes that for antitrust purposes, plaintiff was defendant's agent. Since there is no antitrust violation for a supplier setting the price of its agents, plaintiff's vertical price restraint claim is dismissed with prejudice.

## MONOPOLIZATION

■ Plaintiff's second claim alleges that defendant has a dominant position in the wholesale fresh produce and the institutional fresh produce markets in New York, New Jersey and Connecticut, and is engaged in a conspiracy to monopolize these markets.

In its motion to dismiss, defendant alleges that plaintiff has not described the relevant market, which is a requirement in an antitrust monopolization claim. *See Papst Motoren & Co. v. Kanematsu–Goshu (U.S.A.) Inc.*, 629 F.Supp. 864 (S.D.N.Y. 1986).

In fact, plaintiff has pled sufficient facts regarding the geographic market and defendant's economic power. In its amended complaint, plaintiff alleges that defendant possessed a dominant position in the wholesale fresh produce market in New York, New Jersey and Connecticut and in the institutional fresh produce market in the same area. At this early point in the litigation, such allegations are sufficient to give defendant notice of plaintiff's claim (Amended Complaint ¶¶ 18–19). To require more would swim against the tide of modern liberal pleading requirements.

As an aside, however, the Court finds great merit in defendant's argument that it is impossible to monopolize the wholesale fresh produce market in the tri-state area.

Although in a motion to dismiss a court cannot acknowledge any factual allegation made on behalf of the non-moving party, a court can still use its own common sense.

Fresh produce is a homogeneous product, meaning there is no difference between the product sold by defendant and those sold by any other competitor. As any student of economics knows, the more homogeneous the product the more diffi-

cult it is to acquire or maintain a monopoly. Moreover, if it is true, as defendant alleges, that the industry's barriers to entry are negligible, any allegation of monopolization would be absurd. Finally, the Court is unsure whether the relevant geographic market is the tri-state area. If companies all over the United States supply fresh produce to the tri-state area, then the geographic market is nationwide, and once again monopolization is impossible.

However, this case is in an early stage of litigation. Moreover, the Court is uncomfortable and unwilling to decide a motion to dismiss based on its own cursory knowledge of the industry. Therefore, the defendant's motion to dismiss the monopolization claim is denied.

SO ORDERED.